UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILSON PAGAN, JR.,

                          Plaintiff,

– against –

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

                          Defendant.

**OPINION AND ORDER**
16 Civ. 3774 (ER)

RAMOS, D.J.:

    Wilson Pagan, Jr. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pending before the Court are the parties' cross-motions for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). On July 13, 2017, Magistrate Judge Henry Pitman issued a Report and Recommendation ("R&R"), recommending that Plaintiff's motion be granted and the Commissioner's motion be denied. The Commissioner timely filed objections to the R&R. For the reasons stated herein, the Court ADOPTS the R&R and grants Plaintiff's 12(c) motion and denies the Commissioner's.

## I. BACKGROUND[1]

### A. Procedural History

On December 20, 2012, Plaintiff filed an application for SSI benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 *et seq*, claiming that he suffered from cardiovascular problems associated with varicose veins in his legs, hearing problems in his right ear, scrotal swelling, left arm pain, and asthma. Administrative Record ("AR") Doc. 10 at 15, 192, 214. The Social Security Administration ("SSA") denied his application on February 27, 2013. *Id*. at 109–34. Following Plaintiff's timely request for review of the denial, a hearing was held before Administrative Law Judge ("ALJ") James Kearns. In a written decision dated September 24, 2014, ALJ Kearns confirmed the denial, finding that Pagan "has the residual functional capacity to perform medium work" and was therefore not disabled as defined under the Act. *Id.* at 17–20. Plaintiff subsequently requested and was denied review by the SSA's Appeals Council, at which time the ALJ's decision became the final decision of the Commissioner. *Id*. at 1–6.

Plaintiff commenced the instant action on May 20, 2016, seeking review of the Commissioner's decision. Doc. 1. On August 1, 2016, the Commissioner filed an answer. Thereafter, the parties cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Docs. 11–14. Magistrate Judge Pitman issued his R&R on July 13, 2017, recommending that Plaintiff's motion for judgment on the pleadings be granted and the case be remanded for further proceedings, and that the Commissioner's motion be denied. R&R at 1–2, 57. On July 26, 2017, the Commissioner timely filed written objections to

---

[1] The Court assumes familiarity with the record and procedural history of this case, and discusses here only those facts necessary for its disposition of the instant motions.

the R&R. The Commissioner objected to two of Magistrate Judge Pitman's recommended findings: (1) that the ALJ failed to appropriately apply the treating physician rule and the special technique in according little weight to the opinion of Plaintiff's treating mental health physician, and (2) that remand is warranted to permit the ALJ to obtain a competent medical evaluation of Plaintiff's lower leg arterial diagnostic reports. *See* Doc. 16.

### B. Facts Relevant to Plaintiff's Mental Health

Because the Commissioner's objections turn principally on whether there was sufficient evidence to support the ALJ's finding as to the severity of Plaintiff's mental impairments and whether the ALJ was required to obtain medical analysis of the findings of Plaintiff's lower leg arterial diagnostic reports, the Court briefly reviews the record evidence relevant to those determinations. That evidence stems from three sources: (i) Plaintiff's treating Psychiatrist, Dr. Antonio Alberto Sanchez, (ii) Plaintiff's own testimony before the ALJ, and (iii) diagnostic reports evaluating Plaintiff's varicose veins. The Court reviews each in turn.

**(i)  Treating Psychiatrist Dr. Antonio Alberto Sanchez**

On March 13, 2014, following a psychiatric evaluation, Dr. Antonio Alberto Sanchez diagnosed Plaintiff with depressive disorder, anxiety disorder, and insomnia. R&R at 14; AR at 342. Dr. Sanchez also prepared a "Medical Source Statement About What the Claimant Can Still Do Despite Mental Impairment(s)." R&R at 15; AR at 303–08. He concluded that Plaintiff had a global assessment of functioning score of 46 to 50, indicating that Plaintiff had serious symptoms or difficulty in social or occupational functioning.[2] *Id.* Dr. Sanchez further

---

[2] The [global assessment of functioning] is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms." *Kohler v. Astrue*, 546 F.3d 260, 262 n.1 (2d Cir. 2008), quoting *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders*, at 32 (4th ed. 2000)); *see also Global Assessment of Functioning*, New York State Office of Mental Health, *available at* https://www.omh.ny.gov/omhweb/childservice/.../global_assessment_functioning.pdf. The

opined that Plaintiff had moderate difficulties in social functioning, had deficiencies in concentration, and had experienced repeated episodes of decompensation for extended periods. R&R at 15–16; AR 307–08. With respect to Plaintiff's ability to perform work related activities, Dr. Sanchez concluded that Plaintiff had "extreme loss" in his ability to "[c]omplete a normal workday or workweek without interruptions from physiologically based symptoms" and to "[p]erform at a reasonable pace without an unreasonable number and length of rest periods." R&R at 16; AR at 306. He also concluded that Plaintiff's mental impairments would cause him to be absent from work more than three times a month. AR at 305.

Dr. Sanchez further opined that Plaintiff had a "marked loss" of ability to carry out detailed instructions, maintain attention and concentration for two hour segments, and maintain regular attendance and sustain an ordinary routine. *Id.* at 306. Finally, Dr. Sanchez concluded that Plaintiff had mild or no loss in his ability to remember locations and work related procedures, to understand and to carry out short, simple instructions and make simple work-related decisions. *Id.* Given this assessment, Dr. Sanchez prescribed plaintiff psychotropic drugs for depression and anxiety. *Id.* at 15; AR at 399. Subsequently, in progress reports in April, May, and June of 2014, Dr. Sanchez found that Plaintiff's mental status was generally unchanged. R&R at 17–18; AR at 405, 411, 416.

**(ii)    Plaintiff's Testimony Before the ALJ**

On May 19, 2014, Plaintiff testified in a hearing before the ALJ. As relevant here, Plaintiff stated that he was last employed in December 2012 as a stockman in charge of unloading supplies from trucks and moving them into stores for distribution. AR at 33–34. As

---

Court recognizes that "[t]he utility of this metric is debatable, particularly after its exclusion from the fifth edition of the Diagnostic and Statistical Manual of Mental Disorders." *Berry v. Comm'r of Soc. Sec.*, No. 14 Civ. 3977 (KPF), 2015 WL 4557374, at *3 (S.D.N.Y. July 29, 2015).

to Plaintiff's alleged disabilities, he stated that he could no longer work due to poor circulation and pain in his legs, left arm pain, and a hearing problem, among other issues. *Id.* at 35–37. He testified that standing and sitting for prolonged periods of time caused pain and cramping in his legs, and that as a result he spent most of his day lying down. *Id.* at 38–39. Plaintiff further testified that he could not sit for more than 30 minutes as a time and could not walk more than two or three blocks without stopping. He stated that he did not take care of his grandchildren who lived in his home, or do any housework, cooking, or shopping, and only left his house for medical appointments. *Id.* Plaintiff also stated that he suffers from depression, anxiety, and insomnia. *Id.* at 37.

### (iii) Plaintiff's Lower Leg Arterial Diagnostic Reports

Plaintiff has struggled with varicose veins since at least 2002. R&R at 5; AR at 318. In January 2003, Plaintiff underwent surgery at Westchester Square Medical Center to treat his varicose veins. R&R at 5. In September 2012 and February 2014, plaintiff underwent vascular diagnostic studies at Bronx Metropolitan Healthcare Medical Center. The September 2012 diagnostic report indicated that there were no abnormalities in Plaintiff's right vessels, but that there was "'less than 30% stenosis"[3] and "'irregular plaque in the common femoral artery (20-30%)'" of Plaintiff's left vessels. *Id* at 6; AR 321. The September 2012 report also contained a handwritten note stating: "No Blockage." AR at 321. The second study, conducted in February 2014, showed that Plaintiff had plaque and stenosis in the common femoral arteries of both his right and left vessels. *Id.* at 364.

---

[3] Stenosis refers to an obstruction or a constriction. *Dorland's Illustrated Medical Dictionary*, at 1769 (32nd ed. 2012).

## II. STANDARD OF REVIEW

A district court reviewing a magistrate judge's R&R "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise specific, written objections to the R&R "[w]ithin fourteen days after being served with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the R&R to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the R&R to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

This Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing a denial of disability benefits, however, the Court may not determine *de novo* whether an individual is disabled. Rather, the Court may only reverse the ALJ's determination if it is based upon legal error or is not supported by substantial evidence. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). If the ALJ's findings as to any fact are supported by substantial evidence, those findings are conclusive. *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). If, on the other hand, the ALJ's determination is not supported by substantial evidence or contains legal error, the determination must be reversed or remanded. *Rosa*, 168 F.3d at 77.

## III. DISCUSSION

### A. Determining Disability

An individual is considered "disabled" under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Additionally, a claimant seeking DIB must demonstrate that he became disabled before the date on which he was last insured. *Id.* §§ 416(i), 423(a) & (c)(1). In making a disability determination, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or other; and (4) the claimants educational background, age, and work experience." *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999). In order to determine whether an individual is disabled, the Commissioner follows a five-step sequential evaluation process set out in 20 C.F.R. § 404.1520. "If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

At step one, the Commissioner determines whether the individual is engaged in any "substantial gainful activity;" if he is, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i), (b). At step two, the Commissioner determines whether the individual has a "severe impairment" that "significantly limits [his] physical or mental ability to do basic work activities;" if he does not have such an impairment, he is not disabled. *Id.* § 404.1520(c), (a)(4)(ii). At step three, the Commissioner determines whether the individual has an impairment that meets or equals one of those listed in Appendix 1; if he does, he is disabled. *Id.* § 404.1520(a)(4)(iii), (d). If he does not, the Commissioner will assess and make a finding about the individual's residual functional

capacity ("RFC")—or "the most [he] can still do despite [his] limitations"—based on all the relevant evidence in his case record. *Id.* §§ 404.1545(a)(1), 404.1520(e). At step four, the Commissioner determines whether, considering his RFC, the individual can still do his past relevant work; if he can, he is not disabled. *Id.* § 404.1520(a)(4)(iv), (f). Finally, at step five, the Commissioner determines whether, considering his RFC, age, education, and work experience, the individual can make adjustment to other work; if he cannot make adjustment to other work, he is disabled, and if he can, he is not. *Id.* § 404.1520(a)(4)(v), (g).

In assessing the severity of a claimant's impairment at step two, controlling weight is generally given to a treating physician's opinions. This is known as the treating physician rule. *See* 20 C.F.R. § 404.1527(c)(2) (explaining treating physician rule); *Halloran*, 362 F.3d at 31 (noting that the treating physician rule "generally requires a measure of deference to the medical opinion of a claimant's treating physician"). "When controlling weight is not given to a treating physician's assessment, the ALJ *must* consider the following factors to determine the weight to give the opinion: (1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c). The ALJ must then 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)).

More specifically, when evaluating the severity of mental impairments, the regulations "require application of a 'special technique' at the second and third steps of the five-step framework and at each level of administrative review." *Kohler v. Astrue*, 546 F.3d 260, 265

8

(2d Cir. 2008) (citations omitted). Under this technique, the reviewing authority must "determine first whether the claimant has a 'medically determinable mental impairment.' If the claimant is found to have such an impairment, the reviewing authority must 'rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c),' which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Id.* at 266 (citations omitted) (quoting 20 C.F.R. § 404.1520a); *see also Ornelas-Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016).

### B. The R&R

With respect to the portions of the R&R to which the Commissioner does not object, the Court finds that no clear error is apparent from the face of the record and adopts the recommended judgment. The Court reviews the Commissioner's two objections *de novo*.

**(i)     Objection 1: Treating Physician Rule and the Special Technique**

The ALJ concluded that Plaintiff had a mental impairment, but that it "does not cause more than minimal limitation in the Plaintiff's ability to perform basic mental work activities and is therefore nonsevere." AR at 15. In the R&R, Magistrate Judge Pitman found that the ALJ erred in his application of the treating physician rule. *See* R&R at 41. Specifically, he concluded that the ALJ misapplied the treating physician rule by failing to consider all the factors set forth in 20 C.F.R. § 404.1527(c) while assigning "little weight" to the opinion of Plaintiff's treating psychiatrist, Dr. Sanchez, as to the severity of Plaintiff's mental impairments. *Id.* at 41–44; AR at 15. Magistrate Judge Pittman further concluded that this error affected the ALJ's application of the special technique for the evaluation of Plaintiff's mental impairments, and that the ALJ's findings in this regard were not supported by substantial evidence. *See* R&R at 44–46.

9

The Commissioner contends that the ALJ did not substitute his own opinion for that of Dr. Sanchez, and that there is substantial evidence in the record to support the ALJ's finding. Although the Commissioner acknowledges that the ALJ accorded little weight to Dr. Sanchez's findings, *see* Doc. 16 at 4 (noting that the ALJ's findings "d[o] not directly correspond to those of any medical source"), the Commissioner asserts that this is a non-issue because the ALJ appropriately applied the special technique and considered all the record evidence to gain a longitudinal picture of the Plaintiff's mental disabilities. But this misses the point.

"When controlling weight is not given to a treating physician's assessment, the ALJ *must* consider the" six factors set forth in 20 C.F.R. § 404.1527(c) to determine the weight to give that opinion. *Monroe*, 676 F. App'x at 7 (emphasis added). These factors include "(1) the length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence in support of the opinion; (4) the opinion's consistency with the record as a whole; (5) whether the opinion is that of a specialist; and (6) any other relevant factors. 20 C.F.R. § 404.1527(c). The ALJ must then 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008)). As Magistrate Judge Pitman concluded, "the ALJ did not consider all of the[se] factors." R&R at 44. Aside from noting that Plaintiff had "only recently" begun seeing Dr. Sanchez, *see* AR at 15, the ALJ failed in any way to assess the evidence in support of the opinion, the opinion's consistency with the record as a whole, or even note the physician's level of specialization. Such an assessment fails to consider the required factors and does not "comprehensively" set forth the reasons for the weight assigned to Dr. Sanchez's opinion. This constitutes legal error and is an independently sufficient basis for adopting Magistrate Judge Pitman's recommendation and remanding the case. *See Greek v. Colvin*, 802

10

F.3d 370, 375 (2d Cir. 2015) (noting that failure to provide "'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand") (quoting *Burgess*, 537 F.3d at 129–30); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (same); *see also Rosa*, 168 F.3d at 77 (stating that legal error is a basis for reversing an ALJ's determination).

The Court separately agrees with Magistrate Judge Pitman's finding that the ALJ's failure to appropriately apply the treating physician rule affected his application of the special technique for the evaluation of Plaintiff's mental impairment. R&R at 44. Here, Dr. Sanchez concluded that Plaintiff (1) had moderate difficulties in social functioning, (2) "had deficiencies in concentration and had experienced repeated episodes of decompensation for extended periods," (3) experienced "extreme loss" in his ability to "[c]omplete a normal workday or workweek without interruptions from physiologically based symptoms" and was unable to "[p]erform at a reasonable pace without an unreasonable number and length of rest periods," and (4) had mental impairments that would cause him to be absent from work more than three times a month. R&R at 15–16; AR at 15, 305–08. The ALJ assigned little to no weight to these findings, instead concluding that Plaintiff's "medically determinable impairments of depressive disorder and anxiety disorder" imposed no more than a "minimal limitation" on Plaintiff's ability to perform basic mental work activities. AR at 15. In contradiction of Dr. Sanchez's findings, the ALJ further concluded that Plaintiff had "no limitation" in the areas of social functioning, concentration, persistence or pace and had "experienced no episodes of decompensation which have been of extended duration." *Id.* at 16.

The Commissioner asserts that in conducting the special technique the ALJ grounded his conclusion in Plaintiff's own statements of his abilities, which, the Commissioner argues, conflict with the opinion of Dr. Sanchez. Doc. 16 at 4–5. The ALJ's conclusions, however, find

11

scant support in the record. For example, the Commissioner notes that the ALJ rejected Dr. Sanchez's findings that Plaintiff had a marked loss in his ability to maintain attention and concentrate for two hour segments because Plaintiff self-reported that he enjoyed reading, watching television, and listening to the radio. Doc. 16 at 5–6. It is unclear to the Court how this statement, without more, demonstrates that Plaintiff has "no limitation" in the areas of concentration, persistence or pace and therefore undermines Dr. Sanchez's conclusion that Plaintiff had "deficiencies in concentration" and suffered "extreme loss" in his ability to work at pace. AR at 16, 305–08. Likewise, the fact that Plaintiff lived with his wife and grandchildren, reported having stable relationships with his children, and had never lost a job because he could not get along with others does not sufficiently outweigh Dr. Sanchez's findings that Plaintiff had moderate difficulties in social functioning. This is particularly so in view of the other record evidence relevant to Plaintiff's social functioning. To that point, Plaintiff's own testimony noted that he did not take care of his grandchildren who lived in his home, or do any housework, cooking, or shopping, and only left his house for medical appointments. AR at 38–39. He also reported having unstable relationships with his parents and siblings, AR at 394, and explicitly noted that since the onset of his medical conditions he had experienced a "los[s] of social activities [and] interest." AR at 230. The Court concludes that on the basis of the record before the ALJ, there was not substantial relevant evidence supporting the ALJ's conclusion. *See Halloran*, 362 F.3d at 31 (noting that substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (quotation marks omitted). The ALJ was therefore not entitled to assign little or no weight to Dr. Sanchez's opinions. *See Gavazzi v. Berryhill*, 687 F. App'x 98, 100 (2d Cir. 2017) (noting that a "'circumstantial critique

by non-physicians, however thorough or responsible, must be overwhelmingly compelling in order to overcome a medical opinion'") (quoting *Burgess*, 537 F.3d at 129).

The Commissioner's reliance on *Monroe v. Commissioner of Social Security*, 676 F. App'x 5 (2d Cir. 2017), does not change this analysis. First, unlike here, in that case the Court found that the ALJ "complied with the dictates of the treating physician rule" and "comprehensively explained her reasons for discounting" the opinion of the treating physician. *Id.* at 8. Additionally, in *Monroe* the treating physician's own assessments contained internal inconsistencies and outright contradictions, thereby seriously undermining the treating physician's opinion. *Id.* at 7–8. The ALJ in that case was therefore justified in giving little weight to that treating physician's opinion. The alleged inconsistencies between Dr. Sanchez's findings and Plaintiff's statements do not rise to this level.

Accordingly, the Court concludes that (1) the ALJ erred in applying the treating physician rule, and (2) the ALJ's determination that Plaintiff's mental impairment does not cause more than minimal limitations is not supported by substantial evidence. As noted above, remand to the Commissioner is warranted for the reasons set forth in the R&R. R&R at 46.

### (ii) Objection 2: Remand for Further Record Development Regarding Plaintiff's Lower Leg Arterial Diagnostic Reports

Magistrate Judge Pitman concluded that remand was necessary to properly assess nurse practitioner Edna Davis' opinions and obtain a competent medical evaluation of the diagnostic reports of Plaintiff's lower leg arteries. R&R at 50–56. Specifically, Magistrate Judge Pitman noted that the ALJ concluded that Plaintiff's varicose veins caused only "minimal restrictions" because a diagnostic study of Plaintiff's veins stated "No Blockage." *Id.* at 50; AR at 321. In the absence of medical explanation, Magistrate Judge Pitman reasoned, the ALJ could not

determine the medical import of that conclusion. *Id.* at 51. Magistrate Judge Pitman also noted that the diagnostic report indicated that there was "'less than 30% stenosis noted in the common femoral artery'" and "'irregular plaque in the common femoral artery (20-30%).'" *Id.* (quoting AR at 321). The ALJ failed to provide any analysis of the importance of these other findings.

The Commissioner argues that the record before the ALJ was complete and that the ALJ was under no obligation to seek additional information concerning the lower extremity arterial reports. Doc. 16 at 6–7. The Commissioner contends that this is so because counsel for Plaintiff testified at the hearing that the medical evidence was complete and the SSA fulfilled its responsibilities to develop the record concerning Plaintiff's medical history since there were no gaps in the record. Doc. 16 at 6 (citing AR at 27).

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). This duty to develop the record extends to claimants represented by counsel, *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009), and to circumstances in which the medical evidence in the record "'is inadequate for [the ALJ] to determine whether [a claimant is] disabled,'" *Perez*, 77 F.3d at 47 (quoting 20 C.F.R. § 404.1512(e)). Under such circumstances, the ALJ must contact the claimant's "'treating physician . . . or other medical source to determine whether the additional information [he] need[s] is readily available.'" *Id.* Here, the Court agrees with Magistrate Judge Pitman that there were gaps in the record because there was insufficient medical explanation interpreting the lower leg arterial diagnostic reports. Without such explanation the ALJ could not determine the medical import of the statement "No Blockage." R&R at 51; AR at 321; *see Smith v. Comm'r of Soc. Sec.*, 15 Civ. 1473 (JCF), 2016 WL 1388063, at *11 (S.D.N.Y. Mar. 23, 2016) ("[B]ecause the CT scan report simply

14

documents objective findings without interpreting their practical implications, the ALJ's conclusion rests improperly on his lay assessment of the medical evidence."). This is particularly so where, as here, the September 2012 diagnostic report notes that "irregular plaque" and "stenosis" were identified in the common femoral artery of only the left vessels, and a subsequent, February 2014 diagnostic report found that irregular plaque and stenosis were found in *both* right and left vessels. *See* AR at 321, 364. Neither the ALJ nor medical testimony explained the functional impact of these, ostensibly detrimental (and worsening), findings on Plaintiff. Because the ALJ failed to develop the record here, remand is warranted. *See Moran*, 569 F.3d at 112, 115; *see also Scott v. Comm'r of Soc. Sec.*, 16 Civ. 3261 (VEC) (SN), 2017 WL 1458773, at *3 (S.D.N.Y. Apr. 24, 2017) (noting that a "gap in the record precluded a sufficiently supported assessment [of a CT scan] by the ALJ").

## IV. CONCLUSION

Having so reviewed Magistrate Judge Pitman's thorough R&R, the Court finds no error, clear or otherwise. Rather, Magistrate Judge Pitman reached his determination after a careful review of the parties' submissions and the administrative record. The Court therefore ADOPTS Magistrate Judge Pitman's recommended judgment regarding the parties' motions for judgment on the pleadings. The case is remanded to the Commissioner for further proceedings consistent with this opinion.

It is SO ORDERED.

Dated: September 19, 2017
New York, New York

Edgardo Ramos, U.S.D.J.